

| | THE CITY OF NEW YORK | |
|---|---|---|
| ZACHARY W. CARTER<br>*Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | MARILYN RICHTER<br>(212) 356-2083<br>mrichter@law.nyc.gov |

July 7, 2016

Via ECF and Fax
The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> *John Doe. # 1 v. New York City Department of Education*
> 16 Civ. 1684 (NGG)(RLM)

Dear Judge Garaufis:

  I am an Assistant Corporation Counsel assigned to represent defendants in the above-referenced matter. I write in accordance with Your Honor's Individual Rules to respectfully request that the Court hold a pre-motion conference concerning defendants' proposed motion to dismiss the amended complaint ("the AC"), on the grounds that the Court lacks subject matter jurisdiction over many claims, that plaintiffs have failed to join necessary parties, and that the AC fails to state a claim. Defendants respectfully request that their deadline to answer or otherwise move, which is July 7, 2016, be held in abeyance pending the resolution of their anticipated motion to dismiss. Finally, we have tried to keep this letter brief, in accordance with Your Honor's Individual Rules. Given the unprecedented, in our experience, length of the AC (941 paragraphs, 168 pages, plus an attached declaration) the numerous (24) plaintiffs and the unprecedented nature of some of the legal claims, that has been a challenge, and we hope the Court will find the length appropriate in these circumstances.

  At the outset, defendants want the Court to know, that while we believe that the AC does not present a legally viable claim, contrary to the allegations in the AC, New York City public schools have become safer in the last few years. It is permissible for defendants to address these allegations in a motion to dismiss, because the AC incorporates by reference statistics and reports and includes statistics as an exhibit to the declaration. *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011). The legally recognized standard for school safety is found in the No Child Left Behind statute, 20 U.S.C. §§ 6301, *et seq.*, at 20 U.S.C. § 7912. This provides, *inter*

*alia*, that each state must implement a statewide policy to determine which public schools are persistently dangerous and allow students attending these schools to transfer from these schools. The state policy must be submitted to the federal government. New York State has enacted the Safe Schools Against Violence in Education Act, N.Y. Educ. Law § 3214 and adopted implementing regulations 8 N.Y.C.R.R. §§ 120.0, *et seq*. These regulations provide, at 8 N.Y.C.R.R. § 120.5, that students attending a school that has been determined to be persistently dangerous, must be allowed to transfer to "a safe school." Thus, a safe school is one that has not been determined to be persistently dangerous. The VADIR data cited in the AC are used to make these determinations. Under the standard established by the statutory and regulatory scheme, defendants have reduced the number of persistently dangerous schools by one-third over the past three school years from 40 to 32 to 27. http://www.p12.nysed.gov/sss/ssae/sc/hoolsafety/vadir. The defendants operate over 1,800 public schools so the percentage of New York City public schools that are deemed safe under the controlling standard is over 98.5%.

In addition, the New York City Department of Education ("DOE") promulgates more comprehensive incident data, based on its online incident reporting system, which is referenced in the AC at ¶ 85(d). This data is publicly available, and shows an overall decline in the number of incidents. Finally, the alleged comparison between New York City schools and schools in the rest of the State is invalid. (AC ¶ 3). As discussed further below, while the AC references a recent audit of DOE schools by the Office of the State Comptroller (AC ¶ 11), a nearly simultaneous audit of upstate schools by the same Office found that of the 7 upstate schools audited, 1 school had such comprehensive reporting problems that no accurate data could be ascertained, and 2 of the 7 schools should have been designated as potentially persistently dangerous or persistently dangerous, but were not because of the reporting problems by these schools. http://osc.state.ny.us/audits/allaudits/093015/13s71.pdf

Lack of Subject Matter Jurisdiction - Fed R. Civ. P. 12(b)(1)

The AC alleges federal claims pursuant to 42 U.S.C. §1983 and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*., ("the IDEA").

1) Plaintiff Families for Excellent Schools ("FES") - This organization lacks standing to bring these federal claims. The sole paragraph of the AC concerning FES states that it is a not-for-profit organization seeking to improve education through policy changes in New York and other states, and that a "significant number" of the families it works with have children in New York City public schools who are daily "exposed" to school violence, including some who personally experience such violence. (AC ¶ 43.)

An organization lacks Article III standing to sue under 42 U.S.C. § 1983 for the alleged injuries and violation of the rights of its members. *New York State Citizens' Coalition for Children v. Velez*, 629 Fed. App'x. 92, 93-95 (2$^d$ Cir. 2015); *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984); *Guan N. v. N.Y. City Dep't of Education*, 2013 U.S. Dist. LEXIS 2204, *26 (S.D.N.Y. Jan. 7, 2013).

As to the IDEA claim, the AC does not even assert that any FES' members are parents of children with disabilities attending New York City public schools. (AC ¶ 43).

2) <u>Twelve John Doe ("JD") plaintiffs who have been classified as students with disabilities</u>  Plaintiffs JD1, 2, 3, 9, 10, 11, 13, 16, 19, 20, 21 and 23 have been classified as students with disabilities. None asserts that s/he invoked, let alone exhausted, the available administrative procedures before bringing this federal action. (Nor do the corresponding Parent plaintiffs.) The court lacks subject matter jurisdiction unless the plaintiff has exhausted the required administrative remedies. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002).

There is a two-tier administrative procedure in New York; first a hearing before an Impartial Hearing Officer and then an appeal to a State Review Officer. 20 U.S.C. § 1415(f),(g); N.Y. Educ. Law § 4404(1),(2); 8 N.Y.C.R.R. § 200.5(j),(k). This administrative process allows administrators to apply their expertise and promptly resolve grievances and promotes judicial efficiency. *Polera, supra*, 288 F.3d at 487. Exhaustion of these administrative remedies is a prerequisite to bringing suit. *Id.* at 481; *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008). The exhaustion requirement applies to claims brought under other statutes, including section 1983, whenever a plaintiff asserts claims related to the education of a disabled child. *Cave, supra*, 514 F.3d at 246-249.

The AC seeks to evade this exhaustion requirement by alleging, in wholly conclusory fashion, that the alleged violations are systemic and numerous and that utilization of the administrative process "would lead to inconsistent results." (AC ¶¶ 927, 928). However, the systemic exception to the exhaustion requirement is inapplicable here; it applies to policies, procedures and general practices inherent in the program itself. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 113-114 (2d Cir. 2004). The conclusory and indeed largely boilerplate allegations here, that DOE failed to take plaintiffs' IEPs into account when addressing bullying and failed to take the bullying into account when creating or modifying the IEPs (AC ¶¶ 164, 224, 418. 435, 524, 696, 804, 844), are precisely the types of claims that can be addressed through the administrative process, which can ascertain the relevant facts. *Cave, supra*, 514 F.3d at 248. The administrative process can revise an IEP, amend a classroom placement and order related services. *Polera, supra*, 288 F.3d at 489; *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp.2d 490, 507 (S.D.N.Y. 2011); *Piazza v. Florida Union Free Sch. Dist.*, 777 F. Supp.2d 669, 676 (S.D.N.Y. 2011). Administrative review of the allegations here would further the goals of developing facts, making use of available expertise, and promoting efficiency. *Hope v. Cortines*, 877 F. Supp. 14, 22 (E.D.N.Y. 1995), *aff'd.*, 69 F.3d 687 (2d Cir. 1995). Plaintiffs' assertion that utilization of the administrative process "would lead to inconsistent results" demonstrates a lack of understanding of the process. (AC ¶ 928). This process properly leads to individualized results; the evidence adduced determines whether a particular student's IEP should be modified and if so how. These are not inconsistent results; that is how the process is supposed to work. That the AC is a putative class action does not provide jurisdiction where there is none. *See Hoeft v. Tucson Unified Sch. Dist.* 967 F.2d 1298, 1308 (9th Cir. 1992).

Ironically, in the decision relied on by plaintiffs, *T.K. v. N.Y. City Dep't of Educ.* 779 F. Supp.2d 289 (E.D.N.Y. 2011), which is the subject of an extended footnote in the nature of legal

argument (AC n. 117, p. 160), not only had the plaintiff parents exhausted their administrative remedies, but the District Court then requested and obtained additional administrative proceedings and findings. Plaintiffs here failed to cite the subsequent *T.K.* case history. After the cited ruling, the District Court remanded the matter to the Impartial Hearing Officer, since, as the Court noted, the district court judge is not an expert on educational policy, to review the evidence of bullying and determine whether this had deprived the student of a free and appropriate public education. 2011 U.S. Dist. LEXIS 46783 *1-2 (E.D.N.Y. May 2, 2011). There was then an appeal to the Second Circuit, which affirmed on the very narrow ground that, under the circumstances shown in the administrative record, there was a procedural failure to address the parents' stated concerns about bullying at the meetings held to discuss the IEP. 810 F.3d 869, 876-77. Accordingly, the case relied on by plaintiffs demonstrates the necessity for development of the factual record which is accomplished through the mandated administrative process.

Failure to Join Necessary Parties Fed. R. Civ. P. 19(a)(1)(B)(i)

Among the numerous forms of requested injunctive relief, is a request that defendants be required, *inter alia*, to review "all previous unresolved reports of school violence" made by the plaintiffs and "resolve said matters pursuant to Chancellor's Regulations that are amended in accordance with this Court's orders, and compliant with DASA, the New York Constitution and the United States Constitution." (AC ¶ 941(f)). If, *arguendo*, this requested relief were granted, many of the alleged wrongdoers might be subject to proceedings that could result in adverse consequences, such as disciplinary measures. In addition, it is requested that such proceedings be conducted in accordance with amended Chancellor's Regulations and procedures, whose content is not now known, that will be applied retroactively. (Defendants have asked plaintiffs' counsel for the names of the individuals who are identified in the AC only as Bully 1A, Bully 1B, Bully 2A, etc. (AC ¶¶ 154, 167, 422), but to date that information has not been provided.) Accordingly, these persons have an interest relating to the subject of this action and the failure to join them will impair or impede their ability to protect that interest. Thus, they are required to be joined as parties pursuant to Fed. R. Civ. P. 19(a)(1)(B)(i).

Failure to State a Claim Fed. R. Civ. P. 12(b)(6)

1) The Chancellor is Not a Proper Party – The AC names two defendants, Carmen Fariña, as the Chancellor of the New York City Department of Education ("DOE") in her Official Capacity, and DOE. An official-capacity suit is a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Accordingly, the official-capacity claims against the Chancellor are duplicative and should be dismissed. *Guan N. v. N.Y.City Dep't of Education*, 2014 U.S. Dist. LEXIS 44783, 23-24 (S.D.N.Y. Mar. 24, 2014).

2) Time-Barred Claims – The AC contains allegations concerning events occurring five and six years ago. (e.g., AC ¶¶ 279, 368, 438). The statute of limitations for claims under 42 U.S.C. § 1983 arising in New York is three years. *Pauk v. Bd. of Trustees*, 654 F.2d 856b (2d Cir.), *cert. denied*, 455 U.S. 1000(1982). The statute of limitations for claims under the IDEA is two years. *Somoza v. N.Y.City Dep't of Educ.*, 538 F.3d 106, 114, and n. 7 (2d Cir. 2008). The statute of limitations for state law claims brought pursuant to Article 78 of N.Y. Civil Practice Law and

Rules is four months. *Damino v. City of New York*, 332 Fed. App'x 679, 682 (2d Cir. 2009). The original complaint, brought by plaintiffs JD1-11 was filed on April 6, 2016. For these plaintiffs, the applicable statutes of limitations are April 6, 2013 for their section 1983 claims, April 6, 2014 for their IDEA claims and December 6, 2015 for their Article 78 claims. The AC, which added plaintiffs JD12-23 was filed on May 24, 2016. For these plaintiffs, the applicable statutes of limitations are May 24, 2013 for their section 1983 claims, May 24, 2014 for their IDEA claims and January 24, 2016 for their Article 78 claims.

3) No Substantive Due Process Claim – The AC asserts that plaintiffs have a substantive due process right, under the Fourteenth Amendment, to be free from bullying and violence by fellow students at their public schools, which arises from an alleged special relationship between the government and the individual students. (AC ¶¶ 900-911). The due process clause does not protect the life liberty or property of persons against invasion by private actors (such as other students) absent such special relationship. *Deshaney v. Winnebago Cnty. Dep't. of Social Services*, 489 U.S. 189 (1989). The great weight of authority of the district court decisions in this Circuit is that there is no applicable special relationship and that students have no substantive due process right to be protected from violence or bullying by fellow students. *See e.g., Reid v. Freeport Public Sch. Dist.*, 89 F. Supp.3d 450, 453-454 (E.D.N.Y. 2015)(Pratt, J.); *Drain v. Freeport Union Free Sch. Dist.*, 2015 U.S. Dist. LEXIS 28346, *3-7 (E.D.N.Y. Mar. 9, 2015) (Feuerstein, J.); *Almonte v. Suffolk Cnty.*, 2011 U.S. Dist. LEXIS 126596 (E.D.N.Y. Nov. 2, 2011)(Wexler, J.); *Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F. Supp. 2d 753 (S.D.N.Y. 2011)(Karas, J.); *Doe v. Torrington Bd. Of Educ.*, 2016 U.S. Dis. LEXIS 42090 (D. Conn. Mar. 30, 2016). In addition, "while the Second Circuit has not directly addressed whether this [special relationship] exception applies to schools, there is wide consensus among federal courts of appeals that it does not." *Gagnon v. E. Haven Bd. of Educ.*, 29 F. Supp.3d 79, 83-84 (D. Conn. 2014) (collecting cases.)

As for public school employees, a claim that a student was subject to racist and sexist epithets and profanity by an employee, does not implicate a constitutional right. *Votta v. Castellani*, 600 Fed. App'x. 16, 17 (2d Cir. 2015). The alleged use of excessive force against a student by an employee will only state a claim for a substantive due process violation if the conduct is so severe that it "shock[] the conscience and [be] so brutal and offensive that it d[oes] not comport with traditional ideas of fair play and decency." *Id* .at 18. (quoting *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).) In *Votta* the Second Circuit held that the alleged conduct of the employee, which included shaking the students, screaming at them in such close proximity that he spat on them, and roughly grabbing their facemasks and shoulder pads, did not shock the conscience as a matter of law. *Id.* at 19. In *Smith v. Half Hollow Hills Central School District*, 298 F.3d 168, 170 (2d Cir. 2002)(per curiam), the complaint alleged that a teacher slapped a student full-force in the face, causing the student both great physical and emotional pain, necessitating psychotherapy. The Second Circuit held that no substantive due process claim was stated because the teacher's conduct was insufficient to shock the conscience.

4) No Procedural Due Process Claim - The AC alleges that plaintiffs have a "property and/or liberty interest" to a free public education (AC ¶¶ 881, 884) that is "free of harassment and bullying by employees or students on school property or at a school function." (AC ¶ 883). Defendants have found no authority whatsoever that supports this claim. It is well-settled that the Fourteenth Amendment does not protect a public education as a substantive fundamental

right. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973). Insofar as the AC alleges that state law creates a federal constitutionally-protected "property and/or liberty interest" to a public education free from all harassment and bullying, there is again no authority supporting that claim. Indeed, Article XI, Section 1 of the New York State Constitution does not create a private right of action. *Schafer v. Hicksville Union Free Sch. Dist.*, 2011 U.S. Dist. LEXIS 35435, *58 (E.D.N.Y. Mar. 31, 2011)(Seybert, J.); *K.M. v. Hyde Park Cent. Sch. Dist.* 381 F. Supp. 2d 343, 363 (S.D.N.Y. 2005)(McMahon, J.) Similarly, the only federal court ruling on the Dignity for All Students Act ("DASA") N.Y. Educ. Law §§ 10, *et seq.*, recently held that based on the statutory language and the legislative history, there is no private right of action under DASA. *Terrill v. Windham-Ashland-Jewett Central Sch. Dist.*, 2016 U.S. Dist. LEXIS 42904, *15-20 (N.D.N.Y. Mar. 31, 2016). Finally, insofar as the AC asserts a procedural due process claim based on defendants' alleged failure to follow one or more Chancellor's Regulations (AC ¶ 890), this allegation also is legally invalid. *Santana v. City of New York*, 2014 U.S. Dist. LEXIS 63873, at *29 (S.D.N.Y. May 7, 2014) ("Violations of [City] regulations and policies do not give rise to liability under section 1983").

5) No Equal Protection Claim - Plaintiffs claim that "Defendants are selectively enforcing – or failing to enforce – the [Chancellor's] Regulations in a manner that violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution." (AC ¶ 13). Plaintiffs further claim, in wholly conclusory fashion, that "Defendants' failure to implement the regulations for combating in-school violence was on the basis of an impermissible consideration of race." *Id.* ¶ 917. In support of this claim, plaintiffs allege that "[p]ublic schools with higher rates of Black and Hispanic enrollment have higher rates of violent incidents" and that "[s]chools with lower rates of Black and Hispanic enrollment have dramatically fewer violent incidents. *Id.* ¶ 916.

The crux of plaintiffs' equal protection challenge is their claim that reported incidents of in-school violence disproportionately impact Black and Hispanic students compared to White and Asian students. (*See Id.* ¶¶ 4-6, 853-879, and 919-920). But plaintiffs cannot maintain an equal protection claim based on disproportionate impact. As the Supreme Court has held, "[o]ur cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact." *Wash. v. Davis*, 426 U.S. 229, 239 (1976); *see also Reynolds v. Barrett*, 684 F.3d 193, 201 (2d Cir. 2012) ("But equal protection claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy.").

Insofar as plaintiffs assert an equal protection claim based on intentional discrimination, this claim should also be dismissed. "To sufficiently plead an intentional discrimination equal protection claim a plaintiff can: (1) point to a policy that is discriminatory on its face, meaning that it expressly classifies persons on the basis of their race or national origin; (2) identify a facially neutral policy that is applied in an intentionally discriminatory fashion; or (3) allege that a facially neutral policy is motivated by discriminatory animus and its application resulted in a discriminatory effect." *Broomer v. Huntington Union Free Sch. Dist. Carmen Casper*, No. 12-CV-574, 2013 U.S. Dist. LEXIS 113971, at *18-19 (E.D.N.Y. Aug. 13, 2013) (internal citations omitted).

As an initial matter, plaintiffs' intentional discrimination claim fails because they have not pled the races of the individual plaintiffs or the students who allegedly harassed them, an

omission which is fatal to their equal protection claim.[1] *See Gordon v. City of New York*, 2012 U.S. Dist. LEXIS 44251, at *28-29 (E.D.N.Y. Mar. 29, 2012) (dismissing plaintiff's equal protection claim because "[h]e hasn't alleged any disparity in treatment between himself and another person, and his papers lack any facts related to his race beyond his identification as a minority").

Similarly, to the extent that plaintiffs claim that defendants were deliberately indifferent to racially based harassment, they have failed to sufficiently plead this claim. Only two of the individual plaintiffs are alleged to have experienced racially based harassment by other students. Plaintiffs allege that JD7 was called "racial slurs" and experienced "racial discrimination" by other students (AC ¶¶ 334 and 351) and that JD19 was called "racial slurs" by other students as well. (AC ¶ 664). But these allegations are conclusory as plaintiffs have not actually identified the alleged racial slurs or pled sufficient facts about the alleged racial discrimination towards JD7. *See Harris v. Nassau Cnty.*, 2016 U.S. Dist. LEXIS 68136, at *14 (E.D.N.Y. May 23, 2016) (noting that "conclusory allegations of disparate treatment, or Plaintiff's personal opinion that such treatment was motivated by discriminatory intent, are insufficient to state an equal protection claim").

In addition, plaintiffs cannot meet the first prong of an intentional discrimination claim because the AC is devoid of any allegations that the Chancellor's Regulations at issue are discriminatory on their face. Plaintiffs also cannot satisfy the second or third prongs of this claim because aside from one conclusory allegation in paragraph "917" of the AC, plaintiffs fail to allege any facts specifically demonstrating that any failure to follow the Chancellor's Regulations at issue was motivated by the individual plaintiffs' particular race. See Broomer, 2013 U.S. Dist. LEXIS 113971 at *22 (dismissing plaintiffs' equal protection claims because "the Complaints are devoid of any facts suggesting that race or national origin was a motivating factor behind the enactment of the policy").

To the extent that plaintiffs assert an equal protection claim based on selective enforcement of the Chancellor's Regulations at issue (i.e., Chancellor's Regulations A-832, A-420, A-421, A-449, and A-450), this claim should be dismissed. "A violation of equal protection by selective enforcement arises if: '(1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996) (quoting *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)). But nowhere in the AC's 941 paragraphs do plaintiffs allege facts specifically identifying similarly situated DOE students or allege facts demonstrating that they were treated differently than such similarly situated DOE students. This omission is fatal to any equal protection claim premised on selective enforcement. *See Arteta v. County of Orange*, 141 F. App'x 3, 8 (2d Cir. 2005) (dismissing plaintiffs' equal protection claim because they failed to allege that they were "treated differently from others similarly situated"); *Deprima v. City of New York Dep't of Educ.*, 2014 U.S. Dist. LEXIS 37866, at *16 (E.D.N.Y. Mar. 20, 2014)

---

[1] Based on the hearsay allegations in paragraph "251" of the AC, Plaintiff JD4's race can be inferred as Caucasian.

(holding that "[n]otwithstanding that Plaintiff fails to specifically identify any comparator, absent from Plaintiff's allegations are any facts showing that these [comparators] are similarly situated to Plaintiff").

Furthermore, plaintiffs' use of statistics to purportedly show that school districts with a higher percentage of Black and Hispanic students have higher reported incidents of violence than school districts with lower percentages of Black and Hispanic students fails to state an equal protection claim. See the Declaration of Nathan Jensen, dated May 23, 2016, a copy of which is Annexed as Exhibit A to the AC.

Significantly, the statistics relied on by Jensen, are drawn from the State's VADIR data reporting system, which has been found to be problematic state-wide, based on the categorization of incidents and other issues. Wide-ranging revisions of the data reporting system are now under consideration by the New York State Board of Regents. https://www.regents.nysed.gov/common/regents/files/meetings/SSTFUpdateOct2015.pdf. Finally, a preliminary review by defendants suggests that there are deficiencies in the Jensen analysis.

Even if the VADIR data and the Jensen analysis were not problematic, these statistics proffered by plaintiffs bear no causal connection between reported incidents of school violence and any action or inaction by defendants. Thus, no plausible reading of these statistics supports an inference of disparate impact or intentional discrimination by Defendants. *See Burgis v. New York City Dep't of Sanitation,* 798 F.3d 63, 70 (2d Cir. 2015) (holding that plaintiffs' reliance on statistics failed to demonstrate discriminatory intent because "the statistics provided by plaintiffs show only the raw percentages of White, Black, and Hispanic individuals at each employment level, without providing any detail as to the number of individuals at each level, the qualifications of individuals in the applicant pool and of those hired for each position, or the number of openings at each level"). Plaintiffs' equal protection claim should therefore be dismissed.

6) No IDEA Claim Stated – As discussed above, plaintiffs lack standing to bring an IDEA claim because they have failed to exhaust their administrative remedies. However, even if they had standing, the conclusory, boilerplate allegations concerning these plaintiffs do not state a claim. There is not even an allegation that any individual plaintiff was denied a free and appropriate public education. The AC contains no information about the individual plaintiffs' disabilities, except for JD9 and 21 (AC ¶¶ 405, 40); the other plaintiffs are described as a child with a disability. The allegations concerning the alleged wrongs are also generic. Each plaintiff claims that DOE employees failed to take appropriate responsive actions and 8 out of these 12 plaintiffs assert in boilerplate, identical language, that the school did not take the bullying into account when creating or modifying the plaintiff's individualized educational plan ("IEP"), and did not take the plaintiff's IEP into account when addressing the bullying. (AC ¶¶ 164, 224, 418. 435, 524, 696, 804, 844). Another plaintiff, JD16, makes a similar allegation (AC ¶ 600.) Both the statute's name, the Individuals with Disabilities Education Act, and its stated purpose, to ensure that each individual child with disabilities has available a free appropriate public education that is designed to "…meet their [ ] unique needs" 20 U.S.C. § 1400(d)(1)(A), and that each child with a disability receive an individually tailored education through the use of an individualized

educational plan. 20 U.S.C. § 1401(9), (14), emphasize the individual determinations that must be made for each child.

Supplemental Jurisdiction Should Be Declined

Plaintiffs' Fifth and Sixth Causes of Action assert state law claims. Insofar as the Fifth Cause of Action (AC ¶¶ 930-934) is premised on the New York State Constitution and N.Y. Educ. Law § 3202(2) and the Sixth Cause of Action (AC ¶¶ 937-940) is premised on DASA, N.Y. Educ. Law § 13(1), as discussed above, under procedural due process, no claims are stated. In addition the Sixth Cause of Action is in the nature of a challenge pursuant to Article 78 of N.Y. Civil Practice Law and Rules. (AC ¶ 940). Given the special nature of Article 78 proceedings, the New York federal district courts almost universally decline to exercise supplemental jurisdiction over state-law claims brought pursuant to Article 78. *See. e.g, E. End Eruv Ass'n v. Town of Southampton*, 2014 U.S. Dist. LEXIS 134746, *45-58 (E.D.N.Y. Sept. 24, 2014); *Clear Wireless L.L.C. v. Bldg. Dep't of Lynbrook*, 2012 U.S. Dist. LEXIS 32136, *9 (E.D.N.Y. Mar. 8, 2012). In addition, the general rule is that if the federal claims are dismissed before trial, the state claims should also be dismissed. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Cave, supra,* 514 F.3d at 250.

Thank you for this consideration.

Respectfully submitted,

Marilyn Richter
Assistant Corporation Counsel


Cc: Jim Walden, Adam Cohen, via email