# Walden Macht & Haran LLP

W|M|H

One Broadway, 6th Floor
New York, NY 10004
212 335 2030

November 8, 2016

VIA ECF
The Honorable Nicholas G. Garaufis
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Doe No. 1 et al. v. New York City Department of Education et al.*,
              16-CV-01684-NGG-RLM

Dear Judge Garaufis:

      We represent Plaintiffs in the above-referenced matter. We respectfully request that the Court order Defendant Department of Education ("DOE") to produce limited discovery, despite DOE's stated intention to move to dismiss the Second Amended Complaint. The Court invited this request during our initial appearance on October 18, 2016.

      As detailed below, we ask for only two narrow categories of discovery materials at this stage, neither of which is difficult or burdensome for DOE to produce.

**Factual Background**

      As the Court is well aware, the Second Amended Complaint does not involve run-of-the-mill bullying, nor does it come in a traditional context. The New York Legislature, recognizing the damaging effects of bullying on students' abilities to learn, required all school districts to have systems in place to investigate and remediate bullying. Under the Dignity for All Students Act ("DASA"), the Legislature has effectively banned school bullying—"[n]o student shall be subjected to harassment or bullying by employees or students on school property or at a school function"—and DASA requires school districts to enact and maintain robust systems to achieve this end. N.Y. Educ. Law § 12.

      Despite these legal requirements, the Second Amended Complaint alleges a systematic failure to investigate or remediate bullying, including details of horrific acts of harassment and violence in cases across the DOE public school system. For example:

- On at least three separate occasions, John Doe #1 ("JD1") was kicked, punched, and choked in the presence of school staff members. None of the incidents was reported by the DOE employee witnesses or investigated by the school principal, despite JD1's parent's complaints. (Cplt. ¶¶ 150-70).

Hon. Nicholas G. Garaufis
November 8, 2016
Page 2

- John Doe #2's school failed to investigate multiple incidents of physical violence and bullying by two bullies. As a result of the anxiety and fear caused by these incidents, he stabbed himself in the ear hoping to silence the bullies' insults. (*Id.* ¶¶ 171-209).

- A DOE teacher grabbed John Doe #3 ("JD3"), a student with a disability, by the ear, dragged him down the stairs, and threw him onto a landing. Despite claiming that she would investigate the incident and notify JD3's parent of the result, the principal never did so. Rather, she removed JD3 from his classroom and took no other protective measures. (*Id.* ¶¶ 210-32).

- Jane Doe #5 ("JD5") endured years of bullying from the same bully. During the 2013-14 school year, she regularly came home from school crying and begging not to have to go to school the next day. She took to eating lunch in the bathroom to avoid the bully. Her grandparent repeatedly filed complaints and beseeched the school and DOE to address the bullying. The school principal responded by calling her grandparent a "liar" and denying she had received any bullying reports. During the 2014-15 school year, the bully began assaulting and harassing JD5's younger sister, Jane Doe #6 ("JD6"), who was in the first grade. A nurse's report falsely claimed that JD6 had no visible mark, when it was quite evident JD6 had been struck. In April 2015, the grandparent filed two complaints with DOE, stating that the bully "was literally beating both of my girls." Despite assurances from DOE that it would investigate, the grandparent never heard another word from DOE. (*Id.* ¶¶ 285-338).

- In a teacher's presence, a bully approached Jane Doe #20 ("JD20"), hit her, stole her pencils, threatened to beat her up, and threw her books to the floor. The teacher and the school took no action despite complaints by JD20's parent of ongoing bullying. When her parent sought to complain about the teacher's verbal abuse, the school retaliated by filing a harassment report against JD20's parent, and the teacher retaliated by forcing JD20 to pull a pencil out of a feces-filled toilet. (*Id.* ¶¶ 711-70).

The Second Amended Complaint alleges, citing a report from the New York State Comptroller, among other evidence, that the City is systematically failing to maintain state-mandated data on acts of bullying, in an effort to obfuscate the extent of the problem. (Cplt. ¶ 12). The Second Amended Complaint also alleges, and provides ample factual detail to establish that, DOE routinely retaliates against victim students and parents who report incidents of in-school violence and bullying. (*Id.* ¶¶ 222, 515-16, 561-64, 573-75, 587, 596-603, 658, 742-43).

None of these well-pleaded and thoroughly documented allegations can fairly be characterized as the normal "rough and tumble" of attending school. All of the many forms of evidence offered in the Second Amended Complaint demonstrate a pervasive and system-wide problem, of which DOE has had ample notice, such that failure to address it with systematic reforms constitutes a custom and practice of deliberate indifference to in-school violence.

**Legal Standards**

The Court should be aware that DOE has already agreed to provide limited discovery, although its offer is woefully inadequate. (A copy of Plaintiffs' previously-served document requests is annexed as Exhibit 1 hereto. A copy of Defendant's October 13, 2016 response letter is annexed as Exhibit 2 hereto.)

DOE's concession is appropriate, since it could never adequately justify a stay of discovery, notwithstanding its intention to file a motion to dismiss the Second Amended Complaint. Under settled law, the pendency of a motion to dismiss does *not* automatically stay discovery. *Rivera v. Incorporated Village of Farmingdale*, No. 06-CV-2613 (DRH) (ARL), 2007 WL 3047089, at *1 (E.D.N.Y. Oct. 17, 2007); *Osan Ltd. v. Accenture LLP*, No. 05-CV-5048 (SJ) (MDG), 2006 WL 1662612, at *1 (E.D.N.Y. June 13, 2006). Rather, to justify a stay, Defendant would be required to establish that: (1) it made a strong showing that the plaintiff's claim is unmeritorious; (2) the requested discovery is overbroad and imposes unfair burdens; and (3) there is some risk of unfair prejudice to it. *Rivera*, 2007 WL 3047089, at *1 (citation omitted). DOE could never hope to demonstrate convincingly any one, let alone all three, of these factors.

A. **DOE's merits defenses are weak**

DOE's pre-motion letter (D.E. #22), which articulates its various bases to seek dismissal, is extremely weak. As the Court no doubt noticed, several of DOE's arguments are not dispositive of any claim.[1] Indeed, the Court will remember DOE's initial argument at the pre-motion conference had to do with the standing of Families for Excellent Schools ("FES"), and the Court rightly indicated that this issue was not dispositive. (Transcript of Pre-Motion Conference at 15). Of the arguments that could be dispositive of some claims, the authority offered by DOE is hardly compelling.

For example, the Plaintiffs' procedural due process claim (the First Claim for Relief) rests upon their property interests in free public education. (Cplt. ¶¶ 917-18). DOE claims that "[t]here is no authority supporting the claim that state law creates a federal constitutionally-protected 'property interest' to a public education free from all harassment and bullying." (Pre-motion letter at 6). Contrary to the DOE's assertion, the Second Circuit has expressly recognized that New York law "does appear to create a property interest in education protected by the Fourteenth Amendment." *Handberry v. Thompson*, 446 F. 3d 335, 353 (2d Cir. 2006) (citing *Mitchell C. v. Bd. of Educ.*, 67 A.D.2d 284, 288 (2d Dep't 1979) ("[W]here a State or subdivision thereof

---

[1] These arguments include, for example, that FES lacks standing as an organizational plaintiff; that the alleged bullies should be joined as necessary parties; that the Chancellor is not a proper party; that a small number of background allegations in the Second Amended Complaint fall outside the statute of limitations; and that portions of the Second Amended Complaint describing the legal, statistical, and psychological framework for Plaintiffs' causes of action should be stricken.

Hon. Nicholas G. Garaufis
November 8, 2016
Page 4

undertakes to provide a free education to all students, it must recognize an individual student's legitimate entitlement to a public education as a property interest protected by the due process clause....")). The enjoyment of that right in a violence-free environment is now firmly established law in New York. DASA embodies a legislative finding that this constitutionally-protected property interest is "compromised by incidents of ... harassment including bullying," N.Y. Educ. L. § 10, and mandates that schools take steps to prevent the deprivation of that property interest. The Second Amended Complaint alleges in detail how DOE, through a pattern of deliberate indifference to systemic violence, bullying, and harassment, has deprived Plaintiffs and other class members of their protected property interest. DOE cites no case to the contrary.

With respect to the Elementary School Subclass' substantive due process claim (the Second Claim for Relief), DOE claims that it has no "special relationship" with students, such that a Due Process claim will lie for failing to protect them from the violent acts of other students. Yet, DOE does not refute that the Second Circuit has yet to rule on whether students—and young and disabled students in particular—have such a "special relationship" to DOE. Instead, DOE cites non-controlling authority "that ... students have no substantive due process right to be protected from violence or bullying by fellow students." (Pre-motion letter at 5). The cases cited by DOE are clearly distinguishable, as none address the affirmative legal requirements imposed by DASA and relevant DOE regulations. None of DOE's cases address the body of scientific and clinical evidence showing the serious impact of violence and bullying on young children, who are unable to protect themselves and who, by law, are in DOE's custody during school hours. In the only case so far to address the body of scientific and clinical evidence, Judge Weinstein noted that "[w]here an elementary school student is required to attend school, and truancy laws forcing attendance are in effect, that student may be 'owed *some* duty of care.'" *T.K. v. New York City Dep't of Educ.*, 779 F. Supp. 2d 289, 307 (E.D.N.Y. 2011) (*quoting Pagano v. Massapequa Pub. Schs.*, 714 F. Supp. 641, 643 (E.D.N.Y. 1989)) (emphasis in original). That duty of care squarely implicates the substantive due process claim alleged here. Thus, DOE's substantive due process argument is shaky at best.

With respect to Plaintiffs' equal protection claim (the Third Claim for Relief), DOE makes the assertion that "Plaintiffs cannot maintain an equal protection claim based on disproportionate impact." (Pre-motion letter at 7). This statement conflicts with controlling authority. When analyzing a motion to dismiss an equal protection claim, the Second Circuit has held that statistics alone "may be sufficient to warrant a plausible inference of discriminatory intent if they show a pattern or practice that cannot be explained except on the basis of intentional discrimination." *Burgis v. N.Y. City Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1202 (2016). Here, Plaintiffs present compelling statistics demonstrating the direct correlation between a school's racial composition and school violence, which is sufficient to establish a plausible inference of discriminatory intent required by the Second Circuit. DOE nowhere argues that the statistics Plaintiffs present lack the essential qualities required by the Second Circuit.

With respect to Plaintiffs' IDEA claim (the Fourth Claim for Relief), DOE erroneously seeks to interpose an "exhaustion of remedies" defense. As a matter of law, the Second Circuit has "excused exhaustion of administrative remedies in cases that included allegations of systemic violations" of the IDEA, as the Second Amended Complaint alleges here. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 113 (2d Cir. 2004), *cert. denied*, 544 U.S. 968 (2006). Those systemic violations include a systemic failure to address the impact of bullying when creating students' Individualized Education Programs ("IEPs"). Further, courts have excused exhaustion of administrative remedies where, as Plaintiffs allege in good faith here, the parents "have not been notified that such remedies were available to them." *Weixel v. Board of Educ.*, 287 F.3d 138, 149 (2d Cir. 2002).

DOE does not challenge the merits of Plaintiffs' ancillary state law claims (the Fifth and Sixth Claims for Relief). They merely challenge the Court's jurisdiction to hear such claims. Since Plaintiffs' federal claims will survive a motion to dismiss, so, too, will their supplemental state law claims.

### B. Discovery is not unduly burdensome

As to the second factor—whether the discovery is overbroad or unfairly burdensome—we have taken pains to keep the requests extremely narrow, asking for only two categories of documents: (1) documents reflecting DOE's policies and procedure for addressing in-school violence and (2) documents concerning the specific allegations of violence against the 23 Named Class Plaintiffs. Given this laser-like focus, and DOE's own prior agreement to provide some of the discovery sought (*see* Exhibit 2), a claim of burden would lack any credibility. *See, e.g., Long Island Hous. Servs, Inc. v. Nassau Cty. Indus. Dev. Agency*, No. 14-CV-3307 (ADS) (AKT), 2015 WL 7756122, at *3 (E.D.N.Y. Dec. 1, 2015) (holding that defendant could not argue "undue burden" as to documents it previously agreed to produce); *Rivera*, 2007 WL 3047089, at *1 (holding that limiting discovery to document discovery, while staying depositions pending motion to dismiss, causes no undue burden).

### C. No "unfair prejudice" exists

As to the third factor—a risk of unfair prejudice—it is impossible to conceive of such a risk, since we request only a limited set of DOE's own documents and have even accepted that DOE may redact the names of the alleged bullies. Moreover, we are prepared to accept the documents under an appropriate protective order. *See Brown v. City of N.Y.*, No. 08-CV-5095 (FB) (MDG), 2011 WL 4594276, at *3 (E.D.N.Y. Sept. 30, 2011) (ordering disclosure of confidential information about third parties pursuant to "attorneys eyes only" protective order). Moreover, because the requested documents are the kinds of materials DOE would need to collect in any event to defend against the suit, Plaintiffs are imposing no addition burden on DOE (other than the minimal burdens of producing what it likely has already found or certainly soon will find). Indeed, the only prejudice here is the prejudice to *Plaintiffs* of further delaying discovery.

Hon. Nicholas G. Garaufis
November 8, 2016
Page 6

Plaintiffs allege that the *status quo* involves a widespread, systemic deprivation of education rights across the New York City public school system on a daily basis. Thus, each day of delayed discovery, which in turn adds a day of delay to final adjudication, adds another day of harm to each member of the Proposed Class.

**Specific Requests**

Plaintiffs' narrowly tailored document requests fall into two categories: (1) DOE policies and procedures concerning student bullying and violence, corporal punishment by teachers or other DOE staff, and verbal abuse by teachers or other DOE staff, and (2) the incident file for each Named Class Plaintiff. Specifically, Plaintiffs request:

1. DOE policies, procedures, regulations, and guidance memos in effect from January 1, 2013 to the present concerning (a) student bullying and violence, (b) corporal punishment by teachers or other DOE staff, (c) verbal abuse by teachers or other DOE staff, and (d) discipline, suspension, or transfer of students as a result of being subject to or engaging in any of the foregoing. Documents should be sufficient to show how these policies and procedures were communicated to the relevant school personnel referenced in the Second Amended Complaint ¶¶ 150-858.

2. All DOE documents, emails, and text messages concerning incidents involving the 23 Named Class Plaintiffs described in the Second Amended Complaint ¶¶ 150-858.

**Conclusion**

We look forward to discussing this issue with the Court after DOE submits its response so that the parties can move forward with core discovery in a constructive and cooperative manner.

Respectfully submitted,

Jim Walden
*Attorneys for Plaintiffs*

cc: Marilyn Richter, Esq. (via ECF)
Evan Schnittman, Esq. (via ECF)