DIF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
JOHN DOE #1, a minor by his parent and natural guardian
PARENT #1; JOHN DOE #2, a minor by his parent and
natural guardian PARENT #2; JOHN DOE #3, a minor by
his parent and natural guardian PARENT #3; JANE DOE
#4, a minor by her parent and natural guardian PARENT #4;
JANE DOE #5, a minor by her legal guardian
GRANDPARENT #5; JANE DOE #6 a minor by her legal
guardian GRANDPARENT #5; JOHN DOE #7, a minor by
his parent and natural guardian PARENT #7; JANE DOE
#8, a minor by her parent and natural guardian PARENT #8;
JOHN DOE #9, a minor by his parents and natural guardians
PARENT # 9A and PARENT #9B; JANE DOE #10, a minor
by her parent and natural guardian PARENT #10; JANE
DOE #11, a minor by her parent and natural guardian
PARENT #11; JANE DOE #12, a minor by her parent and
natural guardian PARENT #12; JOHN DOE #13, a minor by
his parent and natural guardian PARENT #13; JANE DOE
#14, a minor by her parent and natural guardian PARENT
#14; JANE DOE #15, a minor by her parent and natural
guardian PARENT #15; JOHN DOE #16, a minor by his
parent and natural guardian PARENT #16; JOHN DOE #17,
a minor by his parents and natural guardians PARENT #17A
and PARENT #17B; JOHN DOE #18, a minor by his parents
and natural guardians PARENT #18A and PARENT #18B;
JOHN DOE #19, a minor by his parent and natural guardian
PARENT #19; JANE DOE #20, a minor by her parent and
natural guardian PARENT #20; JOHN DOE #21, a minor by
his parent and natural guardian PARENT #21; JOHN DOE
#22, a minor by his parent and natural guardian PARENT
#22; and JOHN DOE #23, a minor by his parent and natural
guardian PARENT #23, on behalf of all persons similarly
situated,

**MEMORANDUM & ORDER**

16-CV-1684 (NGG) (RLM)

                                                Plaintiffs,

               -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                                Defendant.
-------------------------------------------------------------------- x

NICHOLAS G. GARAUFIS, United States District Judge.

Twenty-three New York City ("NYC") public-school students (the "Plaintiffs") challenge the alleged failure of the NYC Department of Education (the "DOE") to prevent or adequately redress bullying in public schools. (See 2d Am. Compl. ("SAC") (Dkt. 20).) Plaintiffs allege that, although the DOE has issued regulations intended to address violence and other forms of bullying in schools (including both student-on-student and staff-on-student abuse), schools routinely fail to comply with these regulations. (Id. ¶ 149.) Plaintiffs contend that this alleged failure violates the procedural due process, substantive due process, and equal protection guarantees of the Fourteenth Amendment, as well as the Individuals with Disabilities in Education Act ("IDEA"), Article XI of the New York State Constitution, and Section 7803 of the New York Civil Practice Law and Rules. (Id. ¶¶ 967-77.)

The parties have reached a proposed settlement, which the court preliminarily approved on May 18, 2018. (Am. Proposed Settlement ("APS") (Dkt. 85-1.) Before the court are two motions: (1) a motion to intervene for the limited purpose of objecting to a proposed settlement by non-party Legal Aid Society ("LAS"); and (2) Plaintiffs' motion for final approval of the proposed settlement agreement. (LAS Mot. to Intervene (Dkt. 94); Pls. Mot. for Final Approval ("Pls. Mot.") (Dkt. 106).) LAS seeks intervention as a matter of right pursuant to Federal Rule of Civil Procedure 24(a); or, as an alternative, permissive intervention under Rule 24(b). LAS additionally requests that, in the event that its motion to intervene is denied, the court grant LAS amicus curiae status and consider its objections to the proposed settlement on that basis. (LAS Mem. in Supp. of Mot. to Intervene ("LAS Mem.") (Dkt. 95) at 19.) LAS filed its objections to the proposed settlement along with its motion to intervene. (LAS Objs. to the APS ("LAS

Objs.") (Dkt. 96-1).) The DOE opposes LAS's motion to intervene.[1] (See DOE Mem. in Opp'n to LAS Mot. to Intervene and Objections ("DOE Mem.") (Dkt. 99).) The court held a fairness hearing on June 26, 2018, at which it heard statements regarding the motion to intervene and the merits of the proposed settlement.

Having considered all written submissions and the statements at the fairness hearing, LAS's motion to intervene is DENIED, but the court grants LAS amicus curiae status and considers its objections on that basis. Additionally, Plaintiffs' motion for final approval of the settlement Agreement is GRANTED and the amended proposed settlement is APPROVED.

## I.    BACKGROUND

### A.    Plaintiffs' Alleged Harm

According to Plaintiffs, violence is endemic in NYC public schools, particularly those serving disproportionately poor and minority communities. (SAC ¶¶ 2-6.) In particular, Plaintiffs allege that they have been harmed by student-on-student bullying (which includes violence, taunting, and other forms of social exclusion), staff-on-student violence (including corporal punishment), and staff-on-student verbal abuse. This results from the DOE's alleged failure to implement a comprehensive system to report, investigate, and remediate these problems. (E.g., id. at 1-17.)

Plaintiffs state that their parents were often unable to report incidents because DOE staff ignored them or were otherwise repeatedly unavailable. (See, e.g., id. ¶ 154 (alleging that a principal failed to respond to a parent who made multiple attempts to report a bullying incident).) Plaintiffs further allege that, even when parents were able to schedule meetings with DOE staff to report allegations, DOE staff would often cancel those meetings or fail to document the

---

[1] Plaintiffs have not taken a position on whether LAS's motion to intervene should be granted.

parents' allegations. (See, e.g., id. ¶ 250 (alleging that a student reported an incident to a school dean who did not document the incident or prepare any reports); id. ¶ 581-583 (alleging that a principal cancelled a meeting with a parent and did not respond to requests to reschedule).)

Plaintiffs also allege that DOE staff regularly failed to investigate complaints. When Plaintiffs would follow up with DOE staff about the complaints, the latter refused to provide updates or documentation regarding the incidents. (See, e.g., id. ¶ 240 (alleging that a principal refused to provide a parent with an incident report, claiming the parent was not entitled to it); id. ¶ 752 (alleging that an assistant principal refused to inform a parent of investigative or remedial steps taken by the DOE, other than to claim that he "took care of it").)

Plaintiffs further allege that DOE staff did not adequately redress substantiated reports. Plaintiffs point to a number of examples inadequate responses, including: "blam[ing] the victim", see id. ¶ 498; telling parents that it was impossible for the school to address the problem, see id. ¶ 728; taking actions that were detrimental to the victim's education, such as removing them from the class in which the bullying took place, see id. ¶ 220; and failing to take adequate disciplinary measures against the alleged bullies and abusive staff members, see id. ¶ 859. Furthermore, Plaintiffs allege that when some parents requested that their children be transferred to another DOE school, DOE staff refused, sometimes providing false information regarding transfer procedures. (See, e.g., id. ¶ 368 (alleging that a principal falsely told a parent that a police report was required for a transfer).)

B.     The DOE's Existing Procedures

As the Plaintiffs explain, the DOE is subject to a number of laws that require it to take action to prevent and correct bullying and teacher-on-student violence. At the federal level, the No Child Left Behind Act requires school systems to permit students to leave unsafe schools. (Id. ¶ 57.) The United States Department of Education has also issued guidance advising that

schools are responsible for responding to harassment (id. ¶ 58) and that bullying can deprive disabled students of the free and adequate public education to which they are entitled under the Individuals with Disabilities Education Act ("IDEA") (id. ¶ 137). At the state level, in 2010, the New York state legislature passed the Dignity for All Students Act ("DASA"), N.Y. Educ. Law §§ 10-18, which aims to prohibit bullying and harassment and requires school districts to, among other things, (1) adopt codes of conduct and comprehensive compliance systems for identifying and correcting bullying and harassment; (2) investigate all reported acts of in-school violence; and (3) prevent retaliation against those who report bullying and harassment. (Id. ¶¶ 69-81.)

The DOE has implemented DASA through a series of Chancellor's Regulations. According to Plaintiffs, five of these regulations are not self-executing and are widely ignored by DOE schools and staff. (Id. ¶¶ 95, 108, 115.) The first is Regulation A-832, which prohibits bullying and harassment and establishes a mandatory reporting system for incidents of bullying. (Id. ¶ 83.) Among other things, DOE staff who witness an incident of discrimination, harassment, intimidation, or bullying must verbally report the incident to their principal or principal's designee within one day and file a written report within two days. (Id. ¶ 86.) All complaints of bullying must be entered into an online database (the "Online Occurrence Reporting System" or "OORS") within 24 hours. (Id.) Within five days, the principal or designee must undertake an investigation of the reported incident, including by interviewing the alleged victim and bully, as well as any witnesses; asking the alleged bully for a written statement; advising the parents of the alleged victim and bully of the allegations and whether those allegations are substantiated; take appropriate action; and follow up to ensure that the bullying has stopped. (Id. ¶¶ 87-91.) Principals must also train their staff on DASA compliance. (Id. ¶ 93.)

Second, Regulation A-420 prohibits the use of corporal punishment by DOE staff. (Id. ¶¶ 96-108.) Staff are authorized to use force in a narrow set of circumstances, including for self-defense and the defense of others, or to remove or restrain a disorderly student. (Id. ¶ 98.) Regulation A-420 also establishes a reporting regime similar to that of Regulation A-832. (Id. ¶¶ 99-108.)

Third, Regulation A-421 concerns "verbal abuse" of students by teachers and other DOE personnel. (Id. ¶¶ 109-115.) Like A-832 and A-420, this regulation requires the prompt reporting of any incident of "verbal abuse," including language about or toward students that belittles, embarrasses, or subjects them to ridicule, or worse. (Id. ¶ 110.)

Fourth, Regulation A-449 addresses "safety transfers," by which a parent may choose to transfer a student to a different school if the student is a victim of a violent criminal offense on school property or if it is determined that the student's presence at the school is unsafe for him or her. (Id. ¶¶ 116-126.)

Fifth, Regulation A-450 addresses "involuntary transfers." (Id. ¶¶ 127-135.) If a student's behavioral or academic record is unsatisfactory, a school may "explore" with a parent the possibility of a transfer to another setting, which may take place only if the parent consents, the Borough Director of Student Suspensions approves the transfer, and the principal complies with the prescribed procedures, including by holding an initial hearing and obtaining a final decision from the Borough Director. (Id. ¶ 129.)

C.    **Proposed Settlement Agreement**

On March 14, 2018, the parties reached an initial proposed settlement. (Proposed Settlement (Dkt. 70-1).) They amended the proposed settlement on May 7, 2018, to preserve claims raised by other proposed intervenors in this litigation. (APS.)

Plaintiffs claim that the amended proposed settlement addresses each of the issues they have identified: (1) parents' inability to file complaints (and the DOE's inability to properly document and track complaints); (2) the DOE's failure to investigate complaints; and (3) the DOE's failure to remediate substantiated cases. (Pls. Mem. in Supp. of Mot. For Final Approval of Settlement ("Pls. Final Approval Mem.") (Dkt. 106-1) at 4.) The settlement also provides means by which Plaintiffs can monitor and enforce the DOE's compliance with the settlement. (APS ¶¶ 68-71.)

### 1.    Filing, Documenting, and Tracking Complaints

To improve the ability of parents to file and track their complaints, the DOE agrees to propose revisions to Chancellor's Regulation A-832. These revisions would introduce an electronic reporting system to allow parents to report bullying electronically and to learn when their complaints have been substantiated or resolved. (APS ¶¶ 33-35; see also id. ¶¶ 43-48 (describing requirements for reporting and tracking systems).) This system will be available in multiple languages, generate a confirmation of receipt and a tracking number for each complaint, and provide parents with a Notice of Determination once the investigation is resolved. (Id. ¶ 43(b), (d)(i)-(iii).) If a parent does not receive a Notice of Determination within ten school days of filing a complaint, the reporting system will generate an email providing the parent with the contact information for DOE staff whom they can contact. (Id. ¶ 43(d)(iv).) The DOE will also provide parents with additional information about how to file complaints. (Id. ¶ 38.)

To improve its own processes for documenting and tracking complaints, the DOE will direct every "[s]chool staff member who witnesses, knows about, or obtains notice or information about Student-on Student Bullying, Harassment, Intimidation, and/or Discrimination to promptly report . . . the alleged act to the principal [or the principal's liaison] within one school day" or face disciplinary measures. (Id. ¶ 39.) Principals will be required to submit

complaints of bullying to an electronic database and inform parents of bullying complaints filed

by other parties. (Id. ¶ 40.) The DOE will also communicate the settlement's requirements to

principals and superintendents within the first ten days of each school year, and mandate that

schools include anti-bullying techniques in its annual training sessions for teachers and staff. (Id.

¶¶ 37(a), 67.) Principals will then communicate the settlement's requirements to all teachers and

staff by October 31 of every school year. (Id. ¶ 37(c).)

### 2. Investigating Complaints

Under the terms of the settlement, the DOE will direct principals to complete

investigations of all bullying complaints within ten school days, except when there are

"Extenuating Circumstances" (which DOE staff must document).[2] (Id. ¶ 40.) Additionally,

principals will be required to document more investigation-related information than before; for

example, they must obtain written statements from the alleged victim, accused offender, and any

witnesses "where feasible." (Id. ¶ 40(C).)

To assist schools in investigating complaints, the DOE will also designate a "Central

Team" and an "Escalation Staff." The Central Team will, among other things, generate monthly

reports regarding whether schools are complying with certain provisions, analyze trends across

the city, and provide targeted support to schools that need additional help. (Id. ¶ 56.) The

Escalation Staff will coordinate the completion of bullying investigations in certain situations

(e.g., if a victim alleges that she was retaliated against for making a complaint or if the school

fails to make a determination within ten days in the absence of extenuating circumstances). (Id.

¶ 60.) Once it assumes responsibility for completing an investigation, the Escalation Staff may

---

[2] According to the settlement agreement, extenuating circumstances "may include, but are not limited to,
unavailability of witnesses, significant interruptions to the regular school schedule, such as school testing dates or
building evacuation/lockdown, or instances when the Accused Student does not attend the same School as the
Alleged Victim." (APS ¶ 12.)

perform the investigation itself or refer the investigation to appropriate non-school-based DOE personnel. (Id. ¶ 62.)

### 3. Remediating Substantiated Cases

The settlement requires principals to provide support[3] to victims of "Material Incidents,"[4] and to develop, implement, and document individualized support plans ("ISPs") for victims of multiple Material Incidents in the same school year. Furthermore, the DOE agrees to approve any school-transfer request made by a parent whose child was the victim of a Material Incident, except in situations where the bully is another student who (for whatever reason) will no longer attend the victim's school. (Id. ¶ 64.) The DOE will also approve any request to transfer out of a school made by a parent on the grounds of corporal punishment or staff-on-student verbal abuse if it is determined that the student will no longer be safe at the school. (Id. ¶ 65.)

### 4. Monitoring and Enforcing the Settlement

According to the settlement, the DOE will provide Plaintiffs' counsel with semiannual reports for three years following the launch of the anticipated electronic reporting system. (Id. ¶ 68.) These reports will contain extensive data about the prevalence of bullying complaints and every school's response. (Id. ¶¶ 69-70.) Plaintiffs' counsel will be able to review these reports and deliver objections in writing to the DOE. (Id. at ¶ 71.) Within five business days of the DOE's receipt of any such objections, Plaintiffs and the DOE shall meet and confer to discuss modifications to the DOE's procedures and policies for addressing bullying complaints. (Id.)

---

[3] Such support may include, but is not limited to, the following: referring the victim(s) to a guidance counselor, school social worker, or psychologist; developing an individualized support plan ("ISP"); assigning a mentor or coach; counseling; and for victims with a disability, referral to the victim's individualized education plan ("IEP") team. (Id. ¶ 40(f).)

[4] A "Material Incident" is a "substantiated [b]ullying [c]omplaint which the [s]chool or [the] DOE finds to be a violation of Chancellor's Regulation A-832." (SAC ¶ 16.)

The settlement also provides that, while the court retains jurisdiction to enforce this settlement, the class members will not "impose [or] seek to have imposed, in this or in any other litigation, any additional systematic obligations upon [the] DOE . . . except as a remedy" in connection with a motion to enforce the settlement. Plaintiffs will only move to enforce the settlement if either the DOE fails to implement it or the Plaintiffs can demonstrate the DOE's "systematic failure" to comply with certain provisions of the settlement.[5] (Id. ¶¶ 72-73.) The court's retention of jurisdiction to enforce the settlement will last between four and six years. (Id. ¶ 75.)

### D. Notice of Proposed Settlement, LAS's Motion to Intervene, and Fairness Hearing

Following the court's provisional certification of the Class and preliminary approval of the settlement agreement, the DOE and Plaintiffs' counsel timely posted the Notice of Proposed Settlement of Class Action on their respective websites until the conclusion of the June 26, 2018, fairness hearing. (See Decl. of Evan Schnittman ("Schnittman Decl.") (Dkt. 93) ¶ 3; Decl. of Jim Walden (Dkt. 105) ¶ 3.) Additionally, the DOE posted the notice in DOE Suspension Hearing Offices and Family Welcome Centers until the end of the fairness hearing, and caused it to be published once in the New York Daily News and El Diario. (See Schnittman Decl. ¶ 4.)

On June 5, 2018, LAS informed the court of its desire to intervene for the limited purpose of objecting to the proposed settlement. (See LAS June 5, 2018, Letter (Dkt. 90).) On June 14, 2018, LAS filed a motion to intervene along with a supporting memorandum and proposed objections to the settlement. (LAS Mot. to Intervene; LAS Mem.; Affirm Of Dawne Mitchell

---

[5] The settlement explains in detail how Plaintiffs can demonstrate "systemic failure." (APS ¶ 72(a)(ii)-(iii).) Additionally, if the alleged systemic failure concerns only one school district, the DOE may be able to use a safe harbor by which it may retrain staff regarding their anti-bullying obligations and preclude Plaintiffs from bringing an enforcement action. (Id. ¶ 73(b).)

("Mitchell Aff.") (Dkt. 96); LAS Objs.) LAS indicated that it was not seeking to delay the court's fairness hearing, but merely wanted the court to consider its objections in determining whether the terms of the settlement are fair, reasonable, and adequate. (See LAS Letter at 6-7; Mitchell Aff. ¶ 36.)

The court held a fairness hearing on June 26, 2018. Plaintiffs reported that there were no objections to the proposed settlement other than those of LAS, and that the settlement was the product of arms-length negotiations conducted over the course of more than a year. (June 26, 2018, Fairness Hr'g Tr. (Dkt. No. pending) 3:22-24, 4:9-5:4.) Counsel for both Plaintiffs and the DOE also argued that LAS's objections to the settlement lack merit. (Id. 8:13-9:11, 12:14-14:2.) Additionally, counsel for LAS appeared at the hearing to discuss LAS's objections. (Id. 20:13-31:9.)

At the end of the hearing, the court provided an opportunity for any member of the class to speak as to the class settlement, and set a deadline of July 3, 2018, for written submissions by class members. (Id. at 35:4-24; 37:19-21.) Plaintiffs submitted two letters from parents of class members on July 3, 2018. One indicated support for the settlement. (Letter from Carol Willson (Dkt. 105-1).) The other—written by the parent of a student accused of bullying—expressed concern that the settlement only helps bullying victims and does not provide resources or supports for students accused of bullying. (Letter from Vicki Brown ("Brown Letter") (Dkt. 105-2).)

## II. INTERVENTION FOR THE LIMITED PURPOSE OF OBJECTING TO THE PROPOSED SETTLEMENT

LAS moves to intervene for the limited purpose of objecting to the proposed settlement as of right pursuant to Rule 24(a) or, alternatively, by permission of the court pursuant to Rule 24(b). The DOE argues that LAS's motion should be denied because LAS lacks standing to

object to the settlement and additionally does not meet Rule 24's requirements for intervention. (DOE Mem. at 4-10.) For the following reasons, the court agrees with the DOE and DENIES LAS's motion.

### A. Standing to Object to a Proposed Class-Action Settlement

#### 1. Legal Standard

"Nonparties to a settlement generally do not have standing to object to a settlement of a class action." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 244 (2d Cir. 2007) (citations and internal quotation marks omitted). However, "courts universally recognize an exception to [this rule]: [nonparties] who are able to demonstrate 'plain legal prejudice' from the settlement to which they would like to object have standing to do so." 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 13:24 (5th ed. 2018); see also Bhatia v. Piedrahita, 756 F.3d 211, 218-219 (2d Cir. 2014). "A settlement which does not prevent the later assertion of a non-settling party's claims . . . does not cause the non-settling party [plain] legal prejudice." Bhatia, 756 F.3d at 219. "That level [of prejudice] exists only in those rare circumstances when, for example, the settlement agreement formally strips a non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract rights, or the right to present relevant evidence at a trial." Id. at 218. The objector has the burden of demonstrating its standing. 4 Newberg & Conte, supra, at § 13:22.

#### 2. Application

Because it is undisputed that LAS is not a class member and does not represent any class members for the purpose of objecting to the settlement, whether LAS has standing depends on whether it has demonstrated that it will suffer "plain legal prejudice" as a result of the settlement. LAS has not done this.

LAS argues that it has standing because the immunity granted to DOE in the proposed

settlement would prevent LAS from bringing systemic, bullying-related claims against the DOE

on behalf of class-members for between four and six years. However, the right to assert these

types of claims does not belong to LAS; it belongs to the class members who would be the

plaintiffs in any such lawsuit. LAS is not a class member and—although it has represented class

members in other cases, see LAS Reply (Dkt. 103) at 4-5—does not claim to be counsel of

record for any class members in this litigation. Therefore, "it does not have an affected interest

in the class [members'] claims against [the DOE] to be able to assert its objections." Cent.

States, 504 F.3d at 244.

LAS's reliance on Nnebe v. Daus, 644 F.3d 147, 156-68 (2d Cir. 2011), is misplaced. In

that case, the New York Taxi Workers Alliance ("NYTWA")—the organization whose standing

was at issue—had suffered independent economic injury due to the defendant's actions. Id. at

157-58. This economic injury was the basis for the Second Circuit's decision that the NYTWA

had standing. Id. Here, LAS does not claim to have suffered any economic injury; instead, it

asserts an interest in "ensuring that any settlement of this action either address the underlying

allegations of wrongdoing by DOE in a meaningful way, or leave DOE open to future impact

litigation." (LAS Reply at 4). This is akin to an "abstract concern with a subject that could be

affected by an adjudication," which "does not substitute for the concrete injury required" for a

party to have standing. Ragin v. Harry Macklowe Real Estate, 6 F.3d 898, 905 (2d Cir. 1993)

(quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976)).

An organization can have standing to sue on behalf of its members. See In re Holocaust

Victim Assets Litigation, 225 F.3d 191, 196 (2d Cir. 2000). But LAS does not claim that any of

the students affected by the proposed settlement are "members" of LAS—they have merely been

13

clients of LAS in other proceedings related to bullying incidents. (LAS Reply at 5.) LAS has not cited, and the court is not aware of, any case law indicating that such a relationship can be the basis of standing. Thus, the court finds that LAS does not have standing under Rule 23 to object to this settlement, which renders moot its motion to intervene for the limited purpose of objecting to the settlement.

Additionally, LAS has not met the requirements for intervention as of right for the following reasons.

### B. Intervention as of Right

#### 1. Legal Standard

Intervention as a matter of right under Rule 24(a)(2) is granted when the movant "(1) timely file[s] an application, (2) show[s] an interest in the action, (3) demonstrate[s] that the interest may be impaired by the disposition of the action, and (4) show[s] that the interest is not protected adequately by the parties to the action." Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 128-129 (2d Cir. 2001) (citation and quotation marks omitted). The court must deny the motion for intervention if any one of the four requirements is not met. United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994). The moving party bears the burden of demonstrating that it meets the requirements. See id.

#### 2. Application

##### a) Timeliness

While the timeliness requirement "defies precise definition," courts generally consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." Pitney Bowes, Inc., 25 F.3d at 70.

14

With regard to the first factor, LAS's "interest" in this action—to the extent that it has one—is in ensuring that any settlement between Plaintiffs and the DOE addresses the underlying allegations of wrongdoing and maintaining its ability to bring systemic litigation on behalf of school-aged children. (LAS Mem. at 13.) LAS contends it did not have notice of this interest until March 14, 2018, when the proposed settlement first became public. (See LAS Mem. at 15-18.) DOE asserts that LAS had notice of its interest at an earlier date, either April 6, 2016 (when the lawsuit was commenced), or January 4, 2017 (when publicly filed entries on the court's docket show that the parties were reporting to the court on the status of their negotiations). (DOE Mem. at 8-10.)

The court finds that March 14, 2018 is when LAS first had notice of its interest because LAS seeks to intervene only to object to the terms of the proposed settlement, not to participate in the litigation generally. (See LAS Reply at 6.) LAS further claims that it was unaware of the aspects of the settlement to which it now objects—specifically, the DOE's alleged lack of substantive programming and its four to six year protection from systemic, bullying-related litigation—until after the agreement became public on March 14, 2018. (See id. at 8.)

LAS filed its motion to intervene three months after it became aware of the proposed settlement. To explain this delay, LAS has shown that it spent the interim time studying the settlement and receiving input from other child advocacy and legal services organizations. (See Mitchell Aff. ¶ 36.) The court accepts that, considering the complexity of the settlement, this three-month delay was reasonable. Cf. Pitney Bowes, 25 F.3d at 71 (noting that courts have permitted parties to intervene when the lapse of time between notice of the suit and the application for intervention had been "much longer than" eight months); Werbungs Und Commerz Union Austalt v. Collectors Guild, Ltd., 782 F. Supp. 870, 874 (S.D.N.Y. 1991)

(holding that an intervention application was timely when filed almost two years after the intervenor received notice).

The second and third factors also support a finding of timeliness. LAS's three-month delay in filing its motion to intervene did not prejudice the existing parties because LAS filed its objections to the proposed settlement before the June 15, 2018, deadline for objections. (See LAS Objs.; Notice of Proposed Settlement (Dkt. 88-1) (indicating that the deadline for objections was June 15, 2018).) LAS, however, would suffer prejudice (although not the type of prejudice required to have standing to object, see infra) if its motion was denied because the proposed settlement would prohibit LAS from bringing litigation against the DOE relating to the claims in the Second Amended Complaint for the next four to six years. Finally, there are no unusual factors militating for or against a finding of timeliness.

For the preceding reasons, the court finds that LAS's motion was timely.

>    b)    *Interest in the Action*

A movant must be able to show "an 'interest in the proceeding' that is 'direct, substantial, and legally protectable.'" Laroe Estates, Inc. v. Town of Chester, 828 F.3d 60, 69 (2d Cir. 2016) (quoting Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990)), vacated on other grounds, 137 S. Ct. 1645 (2017). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Wash. Elec., 922 F.2d at 97.

LAS's case for intervention as a matter of right fails at this second requirement. LAS seeks to protect its interest in "ensuring that any settlement in this action addresses the underlying allegations of wrongdoing by DOE" and protecting its ability to "effectuat[e] system-wide change through impact litigation." (LAS Mem. at 13.) Just as this interest does not provide LAS with standing to object to the settlement, see infra, it cannot allow LAS to intervene. The

16

right to assert bullying-related claims against the DOE belongs to the class members, not to LAS. Tellingly, LAS has not cited a single case, and the court is not aware of any, in which a federal court held that the ability of a legal services provider to bring impact litigation was an "interest" for the purposes of Rule 24(a). (See LAS Mem. at 13.)

Because LAS's claim of intervention as of right fails at this second requirement, the court need not consider the third and fourth requirements. See Pitney Bowes, 25 F.3d at 70 (indicating that a court must deny a motion for intervention as of right if any one of the four requirements is not met). Thus, the court DENIES LAS's motion for intervention as of right.

## C. Permissive Intervention

As an alternative, LAS requests permissive intervention under Rule 24(b). For the following reasons, the court denies this request.

### 1. Legal Standard

Under Rule 24(b), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Generally, a district court has broad discretion to grant or deny a request for permissive intervention." ACORN (The N.Y. Ass'n of Cmty. Orgs. for Reform Now) v. County of Nassau, 270 F.R.D. 123, 125 (E.D.N.Y. 2010). In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Citizens Against Casino Gambling in Erie Cty. v. Hogen, 417 F. App'x 49, 50 (2d Cir. 2011) (summary order) (citations and internal quotation marks omitted) (citing H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986)). Additional relevant factors include:

> The nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will

significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

Id. Essentially, "[a]n application for permissive intervention requires the court to consider 'substantially the same factors' as does an application for intervention as of right." United States v. City of New York, No. 07-CV-2067 (NGG), 2007 WL 2581911, at *6 (E.D.N.Y. Sept. 6, 2007) (quoting In re Bank of N.Y. Derivatives Litig., 320 F.3d 291, 300 n.5 (2d Cir. 2003)).

     2.    Application

LAS claims that it should be granted permission to intervene for generally the same reasons that it claims entitlement to intervention as a matter of right. (LAS Mot. at 18-19.) LAS also claims that, given its experience advocating for children who are victimized by or accused of bullying, its intervention will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. (Id. at 19.)

Because LAS lacks standing to object to the proposed settlement, granting it permission to intervene for the limited purpose of objecting would be unavailing. Accordingly, exercising its broad discretion under Rule 24(b), the court DENIES LAS's motion to intervene.

## III.    LEAVE TO PARTICIPATE AS AMICUS CURIAE

Alternatively, LAS requests that the court grant it amicus curiae status and consider its objections on that basis. "There is no governing standard, rule or statute prescribing the procedure for obtaining leave to file an amicus brief in the district court." Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., No. 11-CV-6746 (RJH), 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011) (alterations adopted) (citations and internal quotation marks omitted). "The usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties." Id. "[T]he extent to which, if at all, an amicus should be permitted

to participate lies solely within the discretion of the court." <u>United States v. Gotti</u>, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991).

Treating LAS's filing as an <u>amicus curiae</u> submission does not cause any delay, and thus does not prejudice the existing parties. LAS has already filed its objections, which it now asks the court to consider in its determination of whether to grant final approval of the settlement. Accordingly, the court GRANTS LAS's request that it be granted <u>amicus curiae</u> status, and the court will consider LAS's objections in determining whether the proposed settlement is fair, reasonable, and adequate.

## IV.   DISCUSSION OF THE SETTLEMENT AGREEMENT

### A.   Adequacy of Notice

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 113-14 (2d Cir. 2005). Notice is reasonable if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding." <u>Id.</u> at 114 (quoting <u>Weinberger v. Kendrick</u>, 698 F.2d 61, 70 (2d Cir. 1982)). "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice as class counsel acted reasonably in choosing the means likely to inform potential class members." <u>In re Merrill Lynch Tyco Research Secs. Litig.</u>, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing <u>Weigner v. City of New York</u>, 852 F.2d 646, 649 (2d Cir. 1988)).

The court finds that notice was adequate, both in its content and in its dissemination. The notice summarized the terms of the settlement accurately and in clear language. It provided simple instructions about how to submit written comments regarding the proposed settlement and

how to object at the fairness hearing. The parties posted the notice on their respective websites, in DOE Suspension Hearing Offices and Family Welcome Centers, and in the New York Daily News and El Diario—a method of distributing the notice that was "likely to inform potential class members." Id. Accordingly, the court finds that the parties have complied with Rule 23(e)'s notice requirements.

## B. Approval of the Settlement

Rule 23(e) provides that "the court may approve [a proposed settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). In these circumstances, a court must examine both the negotiation process and the settlement's substantive terms to determine its fairness. Id.

### 1. Procedural Fairness: The Negotiation Process

In assessing the procedural fairness of the settlement, the courts look to whether the agreement was the product of "arms-length negotiations and whether the plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." Id. (quoting Weinberger, 698 F.2d at 74).

The settlement negotiations appear to have been extensive and deliberate. The agreement was reached after nearly 18 months of negotiations and numerous in-person meetings, conference calls, and exchanges of draft settlement stipulations. (Pls. Final Approval Mem. at 12.) Plaintiffs report that the negotiations were "hard-fought," so much so that at one point Plaintiffs' counsel unilaterally filed a letter to Magistrate Judge Mann to request a conference with the court to resolve problems that had arisen. (See Pls. Oct. 31, 2017 Letter (Dkt. 44).) Furthermore, Plaintiffs have been represented by capable counsel who are experienced in class

actions, complex civil litigation, and civil rights litigation. (See Pls. Mem. in Supp. of Mot. For Prelim. Approval of Settlement (Dkt. 72-2) at 14.) Although the parties did not engage in formal discovery in this action, Plaintiffs' counsel represent that they nonetheless conducted a thorough investigation by meeting with many class members, reviewing available DOE documentation and publicly-available data supporting the systemic nature of its clients' claims, and consulting with a child psychologist to help understand the impact of unresolved bullying on children. (See Pls. Final Approval Mem. at 11-12.) In light of these factors, the court is satisfied that the settlement was procedurally fair.

2.    Substantive Fairness: Fairness, Reasonableness, and Adequacy

To grant final approval of a proposed settlement, the court must find that its terms are "fair, reasonable, and adequate." In City of Detroit v. Grinnell Corp., the Second Circuit developed nine factors to consider in making this determination:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), abrogated on other grounds by Goldberger v. Integrated Res. Inc., 209 F.3d 43 (2d Cir. 2000). "A court need not find that every factor militates in favor of a finding of fairness; rather, a court considers the totality of these factors in light of the particular circumstances." In re Merrill Lynch, 249 F.R.D. at 143 (alterations adopted) (internal quotation marks and citations omitted).

### a)  Complexity, Expense, and Likely Duration of the Litigation

The SAC raises complex factual and legal issues, including (but not limited to) the DOE's alleged systemic failure to prevent and redress bullying and whether unmitigated acts of bullying (and other forms of abuse) substantially interfere with Plaintiffs' right to a public education. Plaintiffs claim that if this case went to trial, they would retain experts in education policy and child psychology, which could result in an expensive "battle of the experts" at trial. (See Pls. Final Approval Mem. at 14.)  Moreover, litigation would only further delay the relief to class members in a suit that has now been pending for over two years.  See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.")  Accordingly, this factor weighs in favor of approving the settlement.

### b)  Reaction of the Class to the Settlement

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." Wal-Mart Stores, Inc., 396 F.3d at 118 (citation and quotation marks omitted).  The court only received one objection from a class member.  (See Brown Letter.)  Such a small number militates in favor of approval.

### c)  Stage of Proceedings and Amount of Discovery Completed

This factor concerns whether there is "some evidentiary foundation in support of the proposed settlement." Plummer v. Chem. Bank, 668 F.2d 654, 659 (2d Cir. 1982).  "If all discovery has been completed and the case is ready to go to trial, the court obviously has sufficient evidence to determine the adequacy of settlement." Wal-Mart Stores, Inc., 396 F.3d at 118 (citation and quotation marks omitted).  That said, "the absence of formal discovery has not always prevented consideration of the settlement." Chatelain v. Prudential-Bache Sec., Inc., 805 F. Supp. 209, 213 (S.D.N.Y. 1992).

As discussed above, while the parties did not engage in formal discovery in this case, Plaintiffs' counsel represent that they nonetheless conducted a thorough investigation into their clients' claims. They met with many class members, reviewed numerous relevant documents, and consulted with a child psychologist regarding the impact of unresolved bullying on children. (See Pls. Final Approval Mem. at 11-12.) The SAC also contains detailed allegations that could only have been the product of a searching inquiry. (See SAC.) Based on this record, the court finds that "counsel had sufficient information to act intelligently on behalf of the class," Chatelain, 805 F. Supp. at 213, and that this factor weighs in favor of approval.

> d)   *Risks of Class Prevailing (Establishing Liability, Establishing Damages, Maintaining the Class through Trial)*

The court considers together the fourth, fifth, and sixth factors---risks of establishing liability, risks of establishing damages, and risks of maintaining the class action through trial---as they all relate to the risks Plaintiffs would face in taking this to trial. See Wal-Mart Stores, Inc., 396 F.3d at 118-19 (considering these factors collectively); Padro v. Astrue, No. 11-CV-1788 (CBA), 2013 WL 5719076, at *6 (E.D.N.Y. Oct. 18, 2013) (same). "On these issues, a court should assess the risks of litigation against the certainty of recovery under the proposed settlement." United States v. New York, No. 13-CV-4165 (NGG), 2014 WL 1028982, at *7 (E.D.N.Y. Mar. 17, 2014) (citations and quotation marks omitted).

Plaintiffs' chances of establishing liability are difficult to assess. As discussed above, this case presents complex factual and legal issues, including the DOE's alleged systemic failure to prevent and redress bullying and whether unmitigated acts of bullying (and other forms of abuse) substantially interfere with Plaintiffs' right to a public education. Plaintiffs aver that, to succeed at trial, they would likely require substantial documentary evidence and testimony from

students and experts, which can be costly and difficult to obtain. (Pls. Final Approval Mem. at 19). Continuing litigation would also delay relief for the Class.

In contrast, the proposed settlement can be implemented before the next school year, thus providing relief to the Class almost immediately. See Ingles v. Toro, 438 F. Supp. 2d 203, 214 (S.D.N.Y. 2006) (indicating that the immediacy with which a settlement can be implemented is relevant to the analysis of continuing-litigation risks). Plaintiffs contend that the remedies available at the end of litigation might not be much better than what they would receive from this settlement. (Pls. Final Approval Mem. at 20.) Accordingly, this factor militates in favor of approval.

<em>e)    Range of Reasonableness of the Settlement in Light of the Best<br>Possible Recovery and Attendant Risks of Litigation</em>

"The seventh [Grinnell] factor, the ability of the defendants to withstand a greater judgment, does not apply here because Plaintiffs seek only declaratory and injunctive relief." See New York, 2014 WL 1028982, at *8. Although there is no "settlement fund" in this case, the court considers the eighth and ninth factors together as a determination of the reasonableness of the proposed settlement in light of the best possible recovery and risks of litigation. Id. In this inquiry, a court may compare the proposed settlement to the relief sought by the plaintiffs. Id.

There are some discrepancies between the relief Plaintiffs sought in their SAC and what is provided for by the proposed settlement agreement. For example, the SAC includes requests that the DOE review all previous, unresolved reports of school violence by class members and that the court appoint an independent monitor to audit the DOE's progress. (SAC at 177-78.) Overall, though, the relief in the proposed settlement is comparable to what Plaintiffs sought in the SAC. Some of the reforms contemplated in the SAC are very similar to ones included in the

proposed settlement. For example, the SAC included a request that the DOE "regularly review and update training programs for teachers and staff" regarding anti-bullying techniques. (Id. at 178.) Similarly, the proposed settlement mandates that the DOE will require schools to include anti-bullying techniques in its annual training sessions for teachers and staff. (APS ¶¶ 37(a), 67.) Thus, this factor weighs in favor of approving the settlement.

### 3. Objections

There were only two objections to the proposed settlement: one from a class member, and one from LAS. (See Brown Letter; LAS Objs.) The court addresses them here.

LAS objects to the proposed settlement on three grounds. First, the settlement allegedly fails to address the root causes of bullying by focusing only on reporting and investigating bullying incidents rather than substantive programming, and only providing support for victims and not students accused of bullying. (See LAS Objs. at 2, 6-16.) The only objection from a class member also expressed concern that the settlement only helps bullying victims and does not provide resources for students accused of bullying. (See Brown Letter.) As the Plaintiffs point out, however, the proposed settlement is tailored to remedy the problems alleged in the SAC— i.e., that the DOE violates the rights of victim students with its practice of violating state laws and policies regarding the reporting, investigating, and remediating of bullying, corporal punishment, and verbal abuse. (Pls. Final Approval Mem. at 16.) This lawsuit was not intended to address the root causes of bullying or to obtain support for students accused of bullying. (See id.) The court will not reject the settlement for failing to address issues that are outside the scope of the underlying litigation.

LAS's second complaint about the settlement is that it is duplicative of the DOE's current obligations, and thus it is a "bad deal" for the class members. (See LAS Objs. at 2, 16-18.) For example, LAS points to the DOE's pre-settlement public announcement that it will launch an

electronic reporting system—like the one provided for in the proposed settlement—by 2019. (Id. at 18.) In fact, the DOE voluntarily implemented this reform at Plaintiffs' suggestion during settlement negotiations as a measure of good faith. Such a gesture does not reduce the fairness of the proposed settlement.

LAS also contends that existing regulations provide adequate protections in the area of school transfers for bullying victims. The proposed settlement goes further than existing regulations, however, by requiring the DOE to approve transfer requests for any victim of a Material Incident (subject to some exceptions). (See APS ¶ 64.) Even LAS appears to acknowledge that, under existing regulations, the approval of school transfer requests is merely discretionary. (See LAS Objection at 17 (highlighting regulations that "permit[]" and "create more flexibility in granting" transfers).)

Additionally, LAS points out that the proposed settlement includes some obligations that are already required by Chancellor's regulations. (See LAS Objs. at 16-18.) This is true; however, once the settlement is approved, these obligations will become enforceable in federal court, rather than being internal DOE regulations that can be unilaterally rescinded and are unenforceable in federal court. (See DOE Mem. at 17-18.)

LAS's final complaint is that the settlement prejudices the Class by unreasonably shielding the DOE from systemic, bullying-related litigation for at least the next four years. (See LAS Objs. at 18.) In LAS's view, this release of claims "will prohibit needed reforms, particularly with regard to implementation of an effective program to reduce bullying behavior." (Id.) As an example of how the settlement might prohibit needed reforms, LAS alleges that the proposed settlement fails to address the disparate impact of bullying on black and Hispanic students. (Id.) However, as the DOE points out, the settlement does provide for a Central Team

tasked with providing targeted intervention to schools that have disproportionate rates of bullying incidents. (See DOE Mem. at 18-19.) Additionally, the proposed settlement preserves class members'[6] claims for individual (as opposed to systemic) relief. (APS ¶ 32 (listing claims that are reserved by the proposed settlement).) The proposed settlement may not be perfect, but without a more specific identification of the types of bullying-related lawsuits that LAS plans to pursue in the future, the court cannot say that the settlement's release of claims is unreasonable. Thus, LAS's objections do not persuade the court that the settlement is unfair, unreasonable, or inadequate.

### C. Attorney's Fees

In a class-action settlement, the court assesses the reasonableness of attorney's fees in light of the time and effort expended, the complexity of the case, the quality of representation, and public policy considerations. See Wal-Mart Stores, Inc., 396 F.3d at 121 (citing Goldberger, 209 F.3d at 50).

The APS does not specify the amount of fees for which the DOE will reimburse Plaintiffs. Instead, it stipulates that Plaintiffs are entitled to "reasonable fees" both from the lawsuit itself (as if Plaintiffs were the prevailing parties under applicable law) and for time spent enforcing and executing the stipulation. (APS ¶¶ 84-85.) The APS also provides that Plaintiffs' counsel will regularly submit reimbursement requests to DOE's counsel over the course of the settlement. (Id.) If the parties cannot reach agreement within ninety days of a request by Plaintiffs, the parties will proceed at the court's direction. (Id.) Plaintiffs may not seek

---

[6] The settlement provides that the 23 named class representatives may bring claims for individual damages relief, but not individual injunctive or declaratory relief. (APS ¶ 32(a)-(b).) All other class members will be permitted to bring any claims for individual relief that would otherwise be available under law. (Id.)

attorneys' fees, however, for any work in connection with any enforcement motion unless such a motion is granted in whole or in part. (Id. ¶ 85.)

As Plaintiffs have not yet made any requests for fees, the court can only evaluate the APS's process for administering attorneys' fees, not the reasonableness of the fees themselves. It is reasonable that Plaintiffs would receive fees as though they are the prevailing parties under applicable law and for time spent executing and enforcing the settlement. In the future, the court will assess the reasonableness of Plaintiffs' requests as they arise.

## V.     CONCLUSION

For the foregoing reasons, the court DENIES LAS's Motion to Intervene (Dkt. 94), but GRANTS it amicus curiae status and has considered its objections on that basis. In addition, the court finds the proposed settlement to be fair, reasonable, and adequate, and the settlement's provisions regarding attorney's fees to be reasonable. Accordingly, the court GRANTS Plaintiffs' Motion for Final Approval of the Settlement (Dkt. 106).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
July 30, 2018

NICHOLAS G. GARAUFIS
United States District Judge